IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GRACIELA SERNA MCKAY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2325-L** |
| | § | |
| **DALLAS INDEPENDENT SCHOOL DISTRICT, et al.,** | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendants the Preston Hollow Parent Teacher Association, Alice "Meg" Davis Bittner, Kaky Wakefield, and Ana Cranshaw's Motion for More Definite Statement Pursuant to FRCP 12(e) ("motion for more definite statement"), filed February 20, 2007; and (2) Defendants' Amended Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 8(a)(2) or, in the alternative, Motion for More Definite Statement Pursuant to Rule 12(e) ("motion to dismiss"), filed March 12, 2007. After carefully considering the motions, responses, reply, record, and applicable law, the court **denies as moot** Defendants the Preston Hollow Parent Teacher Association, Alice "Meg" Davis Bittner, Kaky Wakefield, and Ana Cranshaw's Motion for More Definite Statement Pursuant to FRCP 12(e); and **grants in part** and **denies in part** Defendants' Amended Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 8(a)(2) or, in the alternative, Motion for More Definite Statement Pursuant to Rule 12(e).

## I. Factual and Procedural Background

Plaintiff Graciela Serna McKay ("Plaintiff" or "McKay") first filed her complaint on December 15, 2006 against Defendants Dallas Independent School District ("DISD"), DISD Board of Trustees (the "School Board"), Michael Hinojosa ("Hinojosa"), Teresa Parker ("Parker"), Alice "Meg" Davis Bittner ("Bittner"), Kaky Wakefield ("Wakefield"), Ana Cranshaw ("Cranshaw"), the Preston Hollow Parent Teacher Association (the "PTA"), the Texas Parent Teacher Association (the "Texas PTA"), and the Parent Teacher Association (the "National PTA"). The original Complaint asserted claims pursuant to 42 USC § 1981, 42 USC § 1985, 42 USC § 2000e et seq. (Title VII), 42 USC § 2000d et seq. (Title VI), and also for violation of First and Fourteenth Amendments through 42 USC § 1983. McKay also brought state law claims of breach of contract, tortious interference, and defamation. She sought declaratory and injunctive relief and attorney's fees.

On February 20, 2007, several Defendants filed a motion for more definite statement. McKay filed a response on March 12, 2007, stating that she did not oppose the motion for more definite statement and indicating her intention to file an amended complaint. On April 9, 2007, McKay filed her First Amended Complaint. In her amended complaint, the live pleading, she omitted her Title VII claims as well as her cause of action for defamation. McKay also narrowed her section 1981 claim, asserting it only against the PTA and the Texas PTA. She no longer names as a Defendant the National PTA.

Plaintiff's claims arise out of her employment with DISD. McKay alleges she was hired as a bilingual teacher and community liaison for Hispanic parents at Preston Hollow Elementary School ("Preston Hollow") in August 2005. First Am. Compl. (hereinafter, "Complaint") ¶ 13. As

part of her job duties, she organized and developed an organization called Preston Hollow Hispanic Parents ("PHHP"). *Id.*

Plaintiff contends that during her employment, she noticed that the classes at Preston Hollow were segregated by race. *Id.* ¶ 14. McKay asserts that in November 2005, the PTA decided to produce a brochure of the school that contained photographs only of white Preston Hollow students. *Id.* ¶ 15. Plaintiff alleges that other teachers were concerned about the brochure; she approached PTA representatives, including Wakefield and Bittner, and Preston Hollow Principal Parker with these concerns. *Id.* ¶¶ 16-17. McKay alleges that Wakefield and Bittner were dismissive and that Parker agreed to address the concerns. *Id.* She claims Bittner sent her an e-mail describing the purpose of the brochure. *Id.* ¶ 17. Plaintiff contends that although two Hispanic children attended the photo shoot, all but one of the pictures in the brochure featured only white children. *Id.* ¶ 19. She alleges that PHHP board members sought a meeting with Parker about the brochure, but that Parker refused to attend two scheduled meetings. *Id.* ¶ 20.

McKay alleges that Parker began retaliating against her for voicing her concerns about segregation at Preston Hollow. *Id.* ¶ 21. She contends that on December 9, 2005, Parker sent an e-mail to her creating what she calls a "non-existent concern" about additional space for McKay's classroom. *Id.* ¶ 22. She also alleges that Parker's attitude towards her changed after she raised concerns about segregation and that Parker made it difficult for her to organize a luncheon Parker had previously authorized. *Id.* ¶ 24. On December 15, 2005, McKay alleges that Parker removed her as bilingual reading teacher and Hispanic parents' liaison and reassigned her as full-time computer teacher after the holiday break. *Id.* ¶ 25. McKay alleges she met with Parker and the

assistant principal on December 16, 2005, to discuss the changes in her position and her concerns about segregation at Preston Hollow, but that Parker did not address her concerns. *Id.* ¶ 26.

According to McKay, when she returned to school after the holiday break, she needed assistance cleaning her new classroom because it had become "dirty, dusty, messy, and disorganized." *Id.* ¶¶ 27-28. She asserts that she needed help because she has an asthma condition and that Parker agreed to have someone clean the room for her. *Id.* ¶¶ 28-29. McKay contends that three custodians came to her classroom, but that they did not finish cleaning the room and she began to have an asthma attack from the dust. *Id.* ¶¶ 30-31. She asserts that she was treated by paramedics for the attack and was ultimately taken to a hospital. *Id.* ¶ 31. She alleges that she was not released to work by her doctor until January 25, 2006, and that her doctor required reasonable restrictions on the cleanliness of her classroom. *Id.* ¶ 32. McKay contends that Parker informed her that she could not accommodate the restrictions and placed McKay on medical leave until February 24, 2006. *Id.* ¶¶ 32-33.

Plaintiff alleges that Parker retaliated against her by reprimanding McKay in writing. She claims that Parker sent her a letter reprimand on January 26, 2006 – while McKay was on medical leave – regarding "insubordinate conduct in communicating with parents that are unsupportive of the principal." *Id.* ¶ 33. McKay alleges that on February 9, 2006, Parker sent another reprimand to her related to a parent who had distributed the November 17, 2005 e-mail Bittner sent to McKay. *Id.* ¶ 35.

McKay alleges that she sent a letter to Hinojosa, the DISD Superintendent, on February 9, 2006 asking for an investigation of segregation at Preston Hollow. *Id.* ¶ 36. She claims that no one ever contacted her regarding her letter. *Id.*

Plaintiff returned to Preston Hollow on February 24, 2006. *Id.* ¶ 37. Parker allegedly issued an intervention plan requiring that McKay refrain from: making negative statements about Parker; having negative communications with parents; and making inaccurate comments about Preston Hollow instructional programs. *Id.* Plaintiff asserts that Parker renewed the plan on March 1, 2006, and gave McKay a poor evaluation on March 7, 2006. *Id.* ¶ 38. McKay received several "below expectation" ratings, though she argues that she had exceeded all DISD requirements. *Id.* On March 8, 2006, the day after the evaluation, Parker allegedly sent McKay a notice that she intended to recommend that the School Board not renew McKay's contract. *Id.* ¶ 39. McKay asserts that she received notice from the School Board on March 30, 2006 that it had voted and her contract would not be renewed. *Id.* According to Plaintiff, she attempted to appeal through the DISD grievance process, but that Parker and DISD refused to "timely participate in the appeal process." *Id.* McKay contends that although she has attempted to be re-employed by DISD for jobs for which she is qualified, her applications have been denied. *Id.* ¶ 40.

## II. Motion for More Definite Statement

Defendants PTA, Bittner, Wakefield, and Cranshaw filed the motion for more definite statement on February 20, 2007. Because Plaintiff did not oppose the motion and she filed an amended complaint on April 9, 2007 in an effort to address the concerns raised by the motion, the court **denies as moot** the motion for more definite statement.

## III. Motion to Dismiss

Defendants DISD, the School Board, Hinojosa, and Parker filed the motion to dismiss on March 12, 2007 when the live pleading was Plaintiff's Original Complaint. Subsequently, McKay

filed the First Amended Complaint. The court first considers whether the motion to dismiss is moot because McKay has filed an amended complaint. As Wright, Miller, and Kane have noted:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1476. Moreover, Defendants appear to consider their motion pending, as they filed a reply brief after McKay filed the First Amended Complaint. While parts of the motion have been made moot by the amendment and withdrawal of certain claims, the court considers the motion to dismiss in light of the allegations in the First Amended Complaint.[1]

### A.  Legal Standard

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6)

---

[1] Accordingly, the court **denies as moot** the motion insofar as Defendants move to dismiss Plaintiff's section 1981, Title VII, and defamation claims. To the extent these Defendants also move in the alternative for a more definite statement, that request is also **denied as moot**.

**Memorandum Opinion and Order – Page 6**

motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B. Analysis

#### 1. Official Capacity Claims

Defendants have moved to dismiss Plaintiff's claims against Parker and Hinojosa in their official capacities, arguing that these claims are redundant because they are nothing more than

claims against DISD, a named Defendant in this lawsuit. Plaintiff did not rebut this argument in her response brief.

A lawsuit against an individual in his or her official capacity is treated as a lawsuit against the governmental entity of which the individual is an employee, official, or representative. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir.), *cert. denied*, 519 U.S. 948 (1996). As Defendants correctly argue, DISD, Parker and Hinojosa's employer, is already a Defendant. The official capacity claims, therefore, are redundant and serve no purpose. Dismissal of the official capacity claims against Defendants Parker and Hinojosa is appropriate. *See Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996).

### 2. Section 1983

McKay asserts claims under section 1983 for violation of her First and Fourteenth Amendment rights. Defendants have argued that the claims against Parker, Hinojosa, DISD, and the School Board should be dismissed for failure to state a claim, and that Parker and Hinojosa are entitled to qualified immunity for these claims. The court turns first to the sufficiency of Plaintiff's allegations to determine if she has alleged the deprivation of a constitutionally-protected right. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215-216 (5th Cir. 1998), *cert. denied*, 531 U.S. 1073 (2001).

#### a. First Amendment

Plaintiff asserts a First Amendment retaliation claim; she alleges that she was retaliated against by Parker and Hinojosa for protected speech and assembly related to her allegations of discrimination and segregation at Preston Hollow. Defendants argue that Plaintiff has failed to

identify the speech entitled to First Amendment protection and that she did not suffer any adverse employment action. Plaintiff responds that her contract was terminated in response to her speech related to a public concern.

To prevail on a section 1983 First Amendment retaliation claim, a public employee must show: "(1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in efficiency; and (4) her speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174, 179-180 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 369 F.3d 826, 830 (5th Cir. 2004)).

Defendants argue that Plaintiff's allegations fail to establish a claim for retaliation for McKay's protected speech or assembly. Although the allegations on this cause of action were scant in the Original Complaint, in the live pleading, McKay has asserted facts underlying her claim that she engaged in speech relating to allegations of segregation at Preston Hollow, that this speech involved a public concern, and that her interest in this speech outweighs any interest in efficiency.

The court must then determine if her speech motivated an adverse employment action, in this case, as alleged by Plaintiff, her termination. Defendants argue that she was not terminated, but simply that her contract was not renewed. In this context, the Fifth Circuit has held:

> Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands. . . . [D]ecisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation.

*Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000) (internal citations omitted). Defendants argue that Parker and Hinojosa did not make any final

**Memorandum Opinion and Order – Page 9**

employment decisions with respect to Plaintiff, and merely recommending a nonrenewal of her contract does not amount to adverse employment action.

In the context of First Amendment retaliation claims, unlike the requirement in a Title VII case, an "ultimate employment decision" is not required. *Sharp v. City of Houston*, 164 F.3d 923, 933, n.21 (5th Cir. 1999). Aside from the nonrenewal of her contract, McKay complains that DISD's refusal to hire her in other positions is also retaliatory. Compl. ¶ 56. A refusal to hire meets the requirement of an "adverse employment action." *Breaux*, 205 F.3d at 157.

McKay also alleges a number of retaliatory reprimands by Parker. Although verbal reprimands may not suffice, formal reprimands issued in retaliation for First Amendment activity are actionable. The Fifth Circuit has held, for example, that even a single formal reprimand of a judicial official in retaliation for the exercise of protected rights was actionable under section 1983. *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999); *Scott v. Flowers*, 910 F.2d 201, 212-13 (5th Cir. 1990).

To the extent that Plaintiff asserts this claim against Hinojosa, the sole allegation she relies upon is his participation in the decision not to renew McKay's contract. Compl. ¶ 48. As Plaintiff acknowledges, the decision to not renew her contract was made by the School Board. *Id*. ¶ 49. Hinojosa, who did not make the decision to terminate Parker himself, is not liable under section 1983. *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 605 (5th Cir. 2001).

Plaintiff alleges that Parker retaliated against her for communicating with parents about the alleged unlawful discrimination and segregation at Preston Hollow through two formal, written reprimands and the plan of intervention. She also contends that DISD and the School Board refused to hire her for other positions. The court determines that McKay has raised facts sufficient to state

a claim against Parker, DISD, and the School Board for First Amendment retaliation for her public speech.

To the extent that Plaintiff has alleged a claim for restriction of her freedom of assembly, however, the court determines that she has not stated a claim upon which relief can be granted. The allegations in the First Amended Complaint are entirely conclusory, and as Defendants point out, somewhat contradictory. While McKay pleads that Parker "unlawfully restricted [her] right to assemble" with Preston Hollow parents, she also pleads that Parker "did not give [Plaintiff] any instructions or orders not to speak to or associate with the Hispanic parents." Compl. ¶¶ 25, 47. Moreover, the allegedly retaliatory reprimands McKay points to specifically reference her communications and speech with Preston Hollow parents. In her response, McKay failed to address this argument or point to allegations that would support a claim that any Defendant restricted her freedom of assembly.

### b. Fourteenth Amendment

McKay also argues the Defendants violated her Fourteenth Amendment rights.[2] Specifically, she asserts that she has a property interest in the initial term of her contract, during which she had the right to clear her name, and that she has a liberty interest in obtaining a name-clearing hearing. Compl. ¶¶ 53-55. Defendants argue that Plaintiff has no property interest in continued employment because her probationary contract expired and that any alleged liberty interest has not been violated because she was not discharged. The court considers each of Plaintiff's alleged interests in turn.

---

[2]Plaintiff has labeled one cause of action "breach of contract and due process" and another "section 1983, section 1985, and violation of First and Fourteenth Amendments." To the extent these allegations overlap, the court considers them together.

**Memorandum Opinion and Order – Page 11**

i.     **Property Interest**

McKay argues that she has a property interest in the initial term of her contract with DISD and that Defendants denied her the right to clear her name. Compl. ¶¶ 51, 53-55. Defendants contend that Plaintiff has no property interest in continued employment because she had only a probationary contract that expired on its terms.

The Supreme Court has held that a non-tenured teacher was not constitutionally entitled to a hearing when the university for which he worked chose not to renew his contract. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972). A non-tenured teacher does not have a protected property interest absent a showing of entitlement in re-employment by the terms of the employment contract. *Id*. On the other hand, the Court held that a lack of tenure or contractual right to continued employment does not by itself defeat a Fourteenth Amendment claim. *Perry v. Sindermann*, 408 U.S. 593, 596 (1972). The Fifth Circuit applied *Roth* and *Sindermann* to a case involving a Texas teacher who had a probationary contract and held that there is "no serious factual contention that as a probationary teacher, [plaintiff] had such expectancy of re-employment as to entitle him to these safeguards for re-employment under the *Roth-Sindermann* principle." *McCullough v. Lohn*, 483 F.2d 34, 34 (5th Cir. 1973). The court determines that Plaintiff has not set forth a property interest sufficient to trigger the due-process protection of the Fourteenth Amendment, because her probationary contract did not create an expectation of re-employment.

ii.     **Liberty Interest**

Plaintiff asserts that her Fourteenth Amendment liberty interest has been violated by Defendants' refusal to provide her with a name-clearing hearing. McKay contends that she requested a name-clearing hearing but that DISD refused to provide one. Compl. ¶ 55. She argues

that the charges made against her and the nonrenewal of her contract are stigmatizing and foreclose her opportunity for future employment. *Id.* ¶¶ 51, 53-55. Defendants argue that the decision not to renew her contract, as a matter of law, does not implicate any liberty interest.

That the School Board chose not to renew her contract is not sufficient to bring a claim for violation of her liberty interest. The "mere non-renewal of a teacher's contract is not such a blight upon [her] good name, reputation, honor, or integrity as to constitute a deprivation of liberty. . . ." *Dennis v. S&S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978). Further, that nonretention alone may make the employee unattractive to other employers does not establish the type of foreclosure of opportunities that would amount to a deprivation of liberty. *Roth*, 408 U.S. at 573, n.12.

McKay has alleged that she requested a name-clearing hearing, but was denied such a hearing. "It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Rosenstein v. City of Dallas, Texas*, 876 F.2d 392, 395 (5th Cir. 1989), *aff'd en banc*, 901 F.2d 61 (5th Cir.), *cert. denied*, 498 U.S 855 (1990).

A plaintiff must show that her "governmental employer has brought false charges against [her] that 'might seriously damage [her] standing and associations in [her] community,' or that impose a 'stigma or other disability' that forecloses 'freedom to take advantage of other employment opportunities'." *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984), *cert. dism'd*, 473 U.S. 901 (1985) (quoting *Roth*, 408 U.S. at 573). McKay alleges that Defendants made public charges against her and that her contract was not renewed. To determine if Plaintiff has been

deprived of a protected liberty interest, the court must find that she was either: "terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to [her] standing or reputation in [her] community, or terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) [s]he was denied other employment opportunities as a result." *Whiting v. University of Southern Mississippi*, 451 F.3d 339, 347 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 1038 (2007).

Plaintiff contends that Defendants made false stigmatizing charges against her of insubordination and misconduct, which were made public at a School Board meeting. Compl. ¶ 54. She complains that DISD and the School Board refused her request for a name-clearing hearing. *Id.* ¶ 55. She asserts that these false charges have destroyed her opportunity for other future employment and have given rise to a presumption of intentional misconduct and public scorn. *Id.* ¶ 51. Accordingly, the court determines that Plaintiff has alleged facts, if proved, that are sufficient to support a section 1983 claim for violation of her Fourteenth Amendment liberty interest.

### c. Claims Against DISD and the School Board

Defendants argue that the court should dismiss Plaintiff's section 1983 claims against DISD and the School Board because her claims rely on a theory of respondeat superior and because Plaintiff cannot show an official policy or custom caused the deprivation of a constitutionally protected right. Plaintiff has pleaded that DISD failed to provide a name-clearing hearing "through policy, practice, custom, or usage" and that the School Board "endorses a policy, custom, practice, or usage of not hiring teachers whose contracts have not been renewed." Compl. ¶¶ 55-56.

A governmental entity "may be held liable only for acts for which it is actually responsible. . . . Thus, § 1983 municipal liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) the moving force of the violation of federally protected rights." *Doe*, 153

F.3d at 215-16 (internal quotations omitted). Included in the definition of "official policy" are: "A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam).

Plaintiff has alleged that DISD and the School Board made the decisions not to renew her contract and to refuse to rehire her and the court has found that she has alleged facts sufficient for a First Amendment retaliation claim and a Fourteenth Amendment liberty claim. The court determines that Plaintiff's allegations of decisions by the School Board are sufficient to state a claim against DISD and the School Board on her section 1983 claims.

### d. Qualified Immunity

Defendants argue that Plaintiff's section 1983 claims against Parker and Hinojosa should be dismissed because those individual Defendants are entitled to the qualified immunity. Neither Parker nor Hinojosa has filed an answer in this case yet, and accordingly neither has pleaded the affirmative defense of qualified immunity. A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Courts in this district have denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense. *Johnson v. Anderson*, 2004 WL 1908212, *1, n.1 (N.D. Tex. Aug. 25, 2004) ("[A] defendant is required to assert qualified immunity in an answer. . . . [A]fter *Schultea* [*v. Wood*, 47 F.3d 1427 (5th Cir. 1995)], it appears to this Court that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable"); *Washington v. Louisiana Dep't of Public Safety & Corr.*, 2004 WL 2984294, *1 (E.D. La. Dec. 6, 2004). The court determines that it will deny Defendants' motion without prejudice as to Parker and

Hinojosa's qualified immunity defense; Defendants will have the opportunity to plead this affirmative defense, and Plaintiff will have the ability to file a *Schultea* reply if necessary.

### 3. Section 1985

Defendants also move to dismiss Plaintiff's section 1985 claim because they argue that she fails to make sufficient factual allegations to sustain a claim of conspiracy. Plaintiff simply responds that her pleadings adequately state a claim.

A plaintiff asserting a section 1985 claim must plead the operative facts upon which his or her claim is based. *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987). Conclusory and bald allegations are simply inadequate; a plaintiff must plead the claim with some specificity. *Id.* The Fifth Circuit has set forth the elements required to plead a section 1985 claim:[3]

> In this circuit, a § 1985(3) claim must allege that (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270, n.12 (5th Cir. 2001) (citing *Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir.1989)).

Plaintiff contends that Defendants conspired to make false charges against her, to retaliate against her, and to terminate her employment. Compl.¶¶ 49, 57. Defendants argue that Plaintiff's claim pursuant to section 1985 must fail because DISD and its employees constitute a single entity

---

[3]Although Plaintiff did not specify which subsection of section 1985 she brings her claim, the court determines that considering all of the allegations in her complaint, she appears to be making a 1985(3) claim for "depriving persons of rights or privileges."

**Memorandum Opinion and Order – Page 16**

that cannot conspire with itself and because Plaintiff fails to allege any facts in support of her conspiracy claim.

The court determines that Plaintiff has not pleaded facts sufficient to support a conspiracy claim. Plaintiff has not stated what each individual Defendant did to promote or further the alleged conspiracy. As the essence of a conspiracy is an agreement or meeting of the minds of the participants, no facts are alleged that an agreement existed or that state the nature of each individual Defendant's acts. Other than Plaintiff's conclusions, there are no specific facts that would indicate that Defendants conspired with each other or with anyone else to achieve some common goal. No facts have been set forth as to how the goals of the conspiracy were to be accomplished. Furthermore, Plaintiff does not show that the alleged conspiracy was motivated by racial animus.

The court realizes that Rule 8 of the Federal Rules of Civil Procedure only requires that a plaintiff make "a short and plain statement that the pleader is entitled to relief." This "short and plain statement," however, must contain facts "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47). The court determines that Plaintiff's pleadings as to her conspiracy claim fail this minimum test. Given the highly conclusory nature of the allegations, one cannot even reasonably infer that Plaintiff has alleged facts, which if proved to be true, would entitled her to relief on her conspiracy claim. A court is not to strain to find inferences favorable to a plaintiff. *R2 Invs.*, 401 F.3d at 642. The highly conclusory allegations set forth are simply too slender of a reed to support a claim of conspiracy. Therefore the court concludes that Plaintiff has not stated a claim upon which relief can be granted pursuant to section 1985.

#### 4. Breach of Contract

Plaintiff alleges that Defendants breached their employment contract with her by refusing to accommodate reasonable medical conditions, placing her on leave which was not fully paid until the medical restrictions were removed, and refusing to provide a name-clearing hearing. Compl. ¶¶ 43-45. Defendants contend that Plaintiff's claim of breach of contract should be dismissed because no particular provision of the contract has been breached.

In Texas, a plaintiff must establish the following elements to assert a claim for breach of contract: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App. – Houston [14th Dist.] 2000, no pet.).

The parties do not dispute that a valid contract existed or that Plaintiff performed by working at Preston Hollow. The parties dispute whether the contract was breached. Plaintiff has alleged that she was placed on medical leave due to an asthma attack and that the leave was extended by Parker's refusal to accommodate McKay's physician's requirements. Compl. ¶¶ 31-33. It is not clear whether Plaintiff's leave was paid, but taking the facts in the light most favorable to her, the court will assume that her leave was unpaid. The probationary contract provides that Parker could only be suspended without pay "for good cause." Mot. Ex. B ¶ 7. The provision also requires that if suspension without pay is proposed, the teacher is entitled to "all the rights set forth in Board policies, and if a hearing is requested, shall be entitled to a hearing . . . ." *Id.*

The court is required to resolve all doubt in favor of the plaintiff. *R2 Invs.*, 401 F.3d at 642. Here the court determines that there may be facts as alleged by Plaintiff that would support a claim for breach of contract. Accordingly, she has stated a claim upon which relief can be granted.

### 5. Declaratory and Injunctive Relief

Defendants have also moved to dismiss Plaintiff's claims for declaratory action and injunctive relief. Plaintiff seeks an injunction prohibiting Defendants: from engaging in unlawful employment practices; from maintaining a policy, custom, or usage of discriminating against her; from interfering with her First Amendment rights; from retaliating against her for opposing discriminatory practices; from interfering with her employment contract; and from making defamatory statements about her. Compl. ¶ 62. Plaintiff also asks the court to order Defendants to reinstate her with back pay. *Id.* Defendants argue that Plaintiff's claim for declaratory action and injunctive relief is not properly maintained and should be dismissed because the relief she seeks is based upon Defendants' past practices.

The court determines that if successful, Plaintiff may be entitled to some declaratory or permanent injunctive relief. There is no need to dismiss these claims at this stage of the litigation, and the court cannot make the determination now whether McKay is entitled to such relief. If at the conclusion of this case, Plaintiff has established that she is entitled to declaratory and injunctive relief, the court will rule in her favor on these claims. If she fails, the court will rule on behalf of Defendants.

## IV. Conclusion

For the reasons herein stated, the court **denies as moot** Defendants the Preston Hollow Parent Teacher Association, Alice "Meg" Davis Bittner, Kaky Wakefield, and Ana Cranshaw's

Motion for More Definite Statement Pursuant to FRCP 12(e). The court **grants in part** and **denies in part** Defendants' Amended Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 8(a)(2) or, in the alternative, Motion for More Definite Statement Pursuant to Rule 12(e). The court **denies without prejudice** Defendants' motion to the extent Parker and Hinojosa have moved to dismiss on the grounds of qualified immunity. The court **dismisses with prejudice** Plaintiff's official capacity claims against Defendants Parker and Hinojosa; **dismisses with prejudice** Plaintiff's First Amendment claim against Hinojosa; **dismisses with prejudice** Plaintiff's freedom of assembly claim; **dismisses with prejudice** Plaintiff's Fourteenth Amendment property interest claim; and **dismisses with prejudice** Plaintiff's section 1985 claim.

**It is so ordered** this 6th day of September, 2007.

_____
Sam A. Lindsay
United States District Judge