IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRACIELA SERNA MCKAY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:06-CV-2325-O |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT; et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's Motion For Summary Judgment filed by Defendant Parker on December 8, 2008 (Doc. #90); Plaintiff's Response to Motion For Summary Judgment filed by McKay on January 12, 2009 (Doc. #112); and, Defendant's Reply to Response to Motion For Summary Judgment filed by Parker on January 30, 2009 (Doc #124).

Having reviewed the relevant filings, the evidence, and the applicable law, the Court finds that Defendant Parker's Motion for Summary Judgment should be and is hereby **GRANTED in part** and **DENIED in part.**

**I. Background**

The present action is related to *Santamaria v. DISD, et al.,* resolved earlier by trial before the Honorable Judge Sam Lindsay. *See* Doc. # 231 (3:06-CV-692-L) (N.D. Tex. Sept. 30, 2007). In *Santamaria*, Judge Lindsay ruled that former Preston Hollow Elementary School ("PHES") principal Teresa Parker ("Parker") engaged unlawfully in the practice of segregation by race

within her school for a period of several years. *Id.* Specifically, the court found that Parker deliberately assigned Latino and African-American students to English-as-a-second-language ("ESL") classrooms instead of general education classes so that white students could be kept together in the same class. In addition, the court found that Parker kept ESL classes in a different part of the PHES building than general education classes. Furthermore, the court found that Parker attempted to conceal this behavior, including shuffling children around to make the classes appear integrated when an investigator visited PHES. The court found these actions violated PHES students' constitutional rights. *Id*. The court found against Parker in her individual capacity, but Defendants Dallas Independent School District ("DISD"), DISD Board of Trustees, Dr. Michael Hinojosa in his official capacity as DISD Superintendent, and Teresa Parker in her official capacity as Principal of PHES were found not to be liable for the civil rights violations of Teresa Parker as an individual. *Id.*

Graciela McKay filed the instant case on December 15, 2006. Plaintiff McKay ("Plaintiff") is a former PHES teacher and community liaison. *See* Doc. # 20 (Plaintiff's Amended Complaint). Plaintiff alleges that, while at PHES, she opposed Parker's practices of segregation, and that she suffered adverse employment actions because of this. *See id.* Plaintiff brings claims against Parker, the DISD, the DISD Board of Trustees, and DISD Superintendent Michael Hinojosa arising out of these allegations including claims for retaliation for opposing segregation, in violation of Title VI; retaliation for public advocacy, in violation of the First Amendment; and for failure to provide Plaintiff with a hearing in violation of her Fourteenth Amendment due

process rights.[1] Plaintiff asks for damages and attorney's fees, as well as declaratory judgment and injunctive relief.

Plaintiff complains of adverse employment actions motivated by retaliation that include: being reassigned duties that (she argues) restricted her access to disgruntled minority race parents; being reassigned to a different and less desirable classroom; being subjected to circumstances that made her medical condition worse; receiving an inadequate response to her medical condition as one that required accommodation; having false and misleading information placed in her personnel and disciplinary files; being falsely accused of abusing arrangements related to training expenses; having expenses wrongfully deducted from her paycheck; being included among those probationary teachers who were not extended contract renewal offers at the end of the year; and, that she was not rehired when she applied to DISD in the fall of 2007. *See* P. App. 258-69.

On December 8, 2008, Defendant Parker filed her Motion for Summary Judgment on all of Plaintiff's claims pending against her. The Court now considers Parker's motion for summary judgment.

**II. Summary Judgment Standard**

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b). Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R.

---

[1] Hereinafter, the term "Defendants" refers to each of these unless specified otherwise.

CIV. P. 56(c); *see also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[T]he substantive law will identify [*8] which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The party that moves for summary judgment bears the initial burden of showing that there is an absence of genuine issue of material fact. *Celotex Corp.,* 477 U.S. 317, 323. Rule 56(b) permits the movant to demonstrate that "with or without supporting affidavits." FED. R. CIV. P. 56(b). Indeed, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. 317, 325 (finding no express or implied requirement in *Rule 56* that the moving party support its motion with affidavits or similar materials *negating* the opponent's claim).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact

4

for trial. *Celotex*, 477 U.S. at 323-24. The Court must "resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party." *Dean v. City of Shreveport,* 438 F.3d 448, 454 (5th Cir. 2006); *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir. 1988). However, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. The non-movant achieves this only by identifying "specific evidence in the record and … articulat[ing] the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Celotex*, 477 U.S. at 324.

### III. Analysis

Defendant Parker has moved for summary judgment on all of Plaintiff's claims against her, including claims for violations of Title VI, procedural due process rights under the Fourteenth Amendment, and the First Amendment. Plaintiff also asks the Court for a declaration that Parker's past practices violated laws including Title VI and 42 U.S.C. § 1983. The Court now considers Plaintiff's claims against Parker under Title VI.

#### A. Title VI claims

Defendant Parker remains in this case solely in her individual capacity. Plaintiff nonetheless argues that Title VI may be applied to Parker, at least for purposes of declaratory and injunctive relief. However, the proper defendant in a Title VI case is an entity rather than an individual.

*Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293,1298 (S.D. Tex 1996); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 95 F.Supp.2d 723, 741-42 (N.D. Ohio 2000*); Schuler v. Bd. of Educ.,* 2000 WL 134346, at *10 (E.D.N.Y. Feb. 1, 2000); *Farmer v. Ramsay*, 41 F.Supp.2d 587, 592 (D. Md.1999); *Lyons v. City of Philadelphia*, 1998 WL 767451, at *3 (E.D.Pa. Nov. 4, 1998); *Torrespico v. Columbia Coll.*, 1998 WL 703450, at *16 (N.D. III. 1998 Sept. 30, 1998); *A.D.E. Food Servs. Corp. v. City of Philadelphia*, 1996 WL 590906 at *4 (E.D.Pa. Oct. 11, 1996); *Wright v. Butts,* 953 F.Supp. 1343, 1350 (M.D.Ala. 1996); *Bustos v. Illinois Inst. of Cosmetology*, 1994 WL 710830, at *2 (N.D. III. 1994 Dec. 15, 1994); *Robinson v. English Dep't of Univ.*, 1988 WL 120738, at *6 (E.D.Pa. Nov. 8, 1988). Plaintiffs have pointed the Court to no cases, and the Court has found none, holding that an individual may be sued under Title VI. Accordingly, the Court concludes that Defendant Principal Parker, sued in her individual capacity, is not a proper defendant under Title VI.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Title VI claim should be and is hereby **GRANTED**.

**B.** Procedural Due Process

Plaintiff alleges that Defendant Parker deprived Plaintiff of her constitutional due process rights in violation of 42 U.S.C. §1983. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right "secured by the Constitution and the laws of the United States" and (2) that the deprivation

occurred under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999). Thus, a threshold inquiry in a § 1983 cause of action is whether plaintiff has alleged a violation of a constitutional right or of federal law. *Neal v. Brim,* 506 F.2d 6, 9 (5th Cir. 1975).

The Fourteenth Amendment provides that no "State [may] deprive any person of life, liberty, or property without due process of law." To invoke Fourteenth Amendment protections, a plaintiff must show deprivation of a property, life, or liberty interest. *Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 251 (5th Cir. 1984), *cert. dismissed*, 473 U.S. 901(1985).

The Court has earlier found that Plaintiff did not have a property interest in employment by DISD. Doc. # 31. However, "[t]he liberty interest protected by the due process clause encompasses an individual's freedom to work and earn a living." *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983). Thus, even without a constitutionally protected *property* interest, a plaintiff may still have a constitutionally protected *liberty* interest.

To establish a claim for violation of procedural due process rights due to deprivation of a liberty interest, an employee must show that she was terminated without notice and an opportunity to be heard for reasons that were false, stigmatizing, and published. *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979). Specifically, she must show: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) the charges were made public; (5) she was not provided notice or an opportunity to clear her name; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *See Bledsoe v. City of Horn Lake,* 449 F.3d 650, 653 (5th Cir. 2006); *Hughes v. City of*

*Garland,* 204 F.3d 223, 226-227 (5th Cir. 2000). A hearing need not be held; it is sufficient to offer the claimant the hearing. *See Perez v. Hous. Auth. of Uvalde,* 95 F. App'x 51, 56 (5th Cir. 2004).

"Notice and an opportunity to respond" are the "essential requirements of due process" under the Fourteenth Amendment. *Loudermill,* 470 U.S. 532 (1985). An employer offers procedural due process when it provides an employee with notice of the termination charges and an opportunity to tell her side of the story. *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989). The hearing must meet the requirements of due process under the Fourteenth Amendment. It is not necessary that the hearing perfect the procedures set out for hearing by the allegedly offending agency. All that is required is that the hearing procedures meet the "constitutional minima" of due process. *See Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986); *see also Bradley v. City of Ferndale*, 148 F.App'x 499, 508 (6th Cir. 2005) ("[T]he violation of city policy is not in and of itself a constitutional violation under 42 U.S.C.§ 1983."); *Waubanascum v. Shawano*, 416 F.3d 658, 667 (7th Cir.2005); *Tanberg v. Sholtis,* 401 F.3d 1151, 1164, 1165 (10th Cir. 2005). Fourteenth Amendment concerns for due process focus on the nature of the proceeding, not its trappings. It does not matter if the provision of due process is formally announced as a "name clearing hearing," which may occur in the course of appeals from discipline or admonishments. *See Rosenstein,* 876 F.2d at 395.

The Court finds that the undisputed evidence establishes that Plaintiff asked Parker for, and received, a name clearing hearing. The record shows that Plaintiff had at least two hearings pursuant to DISD grievance procedures. P. App. 261-62; Def. App. 090-92, 514-17. The first

was an informal hearing scheduled for February 24, 2006. P. App. 261; Def. App. 514. As noted in *Rosenstein,* a name-clearing hearing is not constitutionally infirm because it is informal. *Rosenstein,* 876 F.2d at 395. Nonetheless, a formal Level I hearing was held on April 18, 2006. P. App. 262. In addition, the undisputed evidence shows that DISD and Plaintiff contemplated holding a subsequent hearing pursuant to DISD grievance procedures, but that Plaintiff abandoned the grievance process by a letter from counsel stating:

> Thank you for your interest in proceeding with the Level III hearing; however, Ms. McKay is inclined not to proceed with the grievance procedure. It would likely be futile, delay litigation, and cause added expense.

Def. App. 091; *see also* Def. App. 517 (Plaintiff confirms in deposition testimony that she opted out of the grievance process). Plaintiff's intent to discontinue the hearing process is further evidenced by her lack of response to a follow-up letter from counsel DISD confirming Plaintiff's abandonment of the Level 3 hearing, Def. App. 096, and McKay's Declaration, which states that she chose to pursue legal remedies rather than be a part of a "kangaroo court." Def. App. 096; P. App. 445; *see also* Def. App. 517 (In deposition testimony McKay agreed that she had opted out of the DISD grievance process).

The Court finds Plaintiff received procedural due process and therefore Defendant Parker can bear no liability for denying it to her.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's due process claim should be and is hereby **GRANTED**.

**C.** First Amendment and Retaliation

Plaintiff also claims that Parker retaliated against her for engaging in protected speech, in violation of the First Amendment. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern." *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 691 (5th Cir. 2007). The Supreme Court has addressed the rights of public employees – including teachers – to speak freely as balanced against the need for public institutions to maintain internal discipline and control over their relations with the community. *Garcetti v. Ceballos,* 547 U.S. 410 (2006); *United States v. Nat'l Treasury Employees Union,* 513 U.S. 454 (1995); *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563 (1968). "A public employee's speech is protected by the First Amendment when the interests of the worker as a citizen commenting upon matters of public concern outweigh the interests of the state as an employer, in promoting the efficiency of the services it performs through its employees." *Pickering,* 391 U.S. at 568.

The threshold question is whether the context of the statements made by Plaintiff falls within protected status. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421-23; *Charles v. Grief,* 522 F.3d 508, 512 (5th Cir. 2008); *Williams,* 480 F.3d at 691. In *Garcetti*, the Court found that an assistant district attorney's internal memorandum indicating questionable law enforcement practice were statements pursuant to the attorney's official duties, and therefore the statements did not fall within a protected status. *Garcetti,* 547 U.S. at 421-23. Simi-

10

larly, in *Williams,* the court held that DISD's accountant's speech directed at DISD regarding accounting matters was part of his daily responsibilities, and therefore the accountant's speech did not fall within a protected status. *Williams,* 480 F.3d at 693-94. However, the restricted speech must arise directly from the daily, official duties of the speaker, to be barred from First Amendment protection under *Garcetti*. *Charles,* 522 F.3d at 512. To hold that any employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights. *Id.* The Fifth Circuit also noted that (as in many public employee First Amendment cases) there is less tolerance for restriction on the speech of a lower level non-administrator (like the technician-plaintiff in *Charles v. Grief*) as distinct from someone in a position of "trust and confidence" (like the prosecutor-plaintiff in *Garcetti*). *Id.* at 514.

If the advocacy passes the *Garcetti-Williams-Grief* review, then the Court must apply a two-pronged analysis that begins with whether the restriction on free speech amounted to a restriction on advocacy regarding matters of public concern. *Hoover v. Morales*, 164 F.3d 221, 225 (5th Cir. 1998). "Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court." *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 570 (5th Cir. 2004) (quoting *Thomkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994)). Controversies that can be fairly considered as relating to any matter of political, social, or other consequence to the community are matters of public concern. *Alexander v. Eads*, 392 F.3d 138, 142 (5th Cir. 2004). Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement. *Charles*, 522 F.3d at 514. In considering wheth-

er the content of an employee's speech relates to public concerns, courts have found it generally does not when it pertains to internal disputes and working conditions. *Alexander,* 392 F.3d at 142 (5th Cir. 2004). The Court does not presume that all matters that transpire within a government office are of public concern, and the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. *Commc'n Workers of Am. v. Ector County Hosp. Dist.*, 467 F.3d 427, 438 (5th Cir. 2006). However, the existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern. *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006).

Finally, the Court must "weigh the interest of the employee in freedom of expression and his audience's legitimate need for access to the information against the government's interest 'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (citations omitted).

As previously noted, the threshold question is whether the context of the statements made by Plaintiff falls within protected status. *Garcetti,* 547 U.S. at 421-23. The Court finds that there is no genuine issue of material fact that the speech Plaintiff asserts she was retaliated for was not made pursuant to her employment with DISD. The evidence shows that Plaintiff was a former PHES teacher and community liaison. While Plaintiff's employment required some public involvement, there is no evidence suggesting Plaintiff was hired to investigate DISD practices, including segregation, and to report these practices to the community. While Plaintiff's speech involves facts she learned at work, the Fifth Circuit has noted that to hold that any employee's

speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights. *Charles,* 522 F.3d at 512. Accordingly, the Court finds there is no genuine issue of material fact that the context of Plaintiff's speech is protected, and not barred under *Garcetti.*

The Court must next determine if there is a genuine issue of fact regarding whether Plaintiff's speech involved a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *see also Charles,* 522 F.3d at 512-513 (5th Cir. 2008). It is well established that speech relating to official misconduct or racial discrimination almost always involves matters of public concern. *See Charles*, 522 F.3d at 514; *Markos*, 364 F.3d at 570-71 (where court found content of plaintiff's statements to a reporter regarding police misconduct was of mixed public and private character in situation where these statements also exonerated plaintiff's own reputation); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (speech concerning police misconduct is public in context); *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1269 (5th Cir. 1992) (content of reports of sexual harassment perpetrated by members at the university health center's police force was of great public concern).

Here, Plaintiff has presented evidence raising a genuine issue of fact that she spoke critically to members of the community of DISD's practices fostering segregation. *See, e.g.,* P. App. 133-135. The Court finds, considering the content, form, and context of Plaintiff's statements and advocacy, that these present a matter of public concern.

Defendant Parker argues that Plaintiff did not use the word "segregation" in complaints to Parker or others in the community until after Parker had instituted disciplinary proceedings

against Plaintiff. The Court finds this argument without merit, and does not find it material that Plaintiff did not use the precise term "segregation" when criticizing policies that were later held to be "segregation," including criticizing the exclusion of Hispanic children from school advertising. *Id.* The Court notes that Plaintiff has produced evidence of making such statements prior to the institution of disciplinary proceedings against her. *Id.*

Furthermore, the Court finds that Plaintiff has raised a genuine issue of material fact regarding whether she was retaliated against as a result of engaging in protected speech. Plaintiff has presented evidence upon which a reasonable jury could find a campaign of retaliation by Defendant Parker for Plaintiff's agitation against segregative practices. Evidence has been produced suggesting that in November, 2005, Plaintiff protested the exclusion of Hispanic children from school advertising, at the behest of Hispanic parents. A PTA representative working with Defendant Parker on the matter told McKay in an email:

> Regarding the photo shoot tomorrow that you asked about. The purpose of the brochure is to get more of our immediate neighborhood families that live in big, expensive homes, to reconsider those private tuitions and send their kids to us. While our demographics lean much more Hispanic, we try not to focus on that for this brochure. A big questions [sic.] that neighborhood parents have is about the ethnic breakdowns of our school population. Our neighbor school, being mostly Hispanic, throws the neighborhood families off a bit.

P. App. 244. The concern of the parents with whom Plaintiff consulted, and for whom she spoke, was clearly understood to involve excluding Hispanic children from involvement in representing their school.

The alleged retaliation campaign for which Plaintiff has produced evidence raising a genuine issue of fact involved Parker cutting Plaintiff off from communications with those parents and other community groups. For example, Plaintiff relates that:

> Parker removed my duties as a community liaison after the first of the year. After the first of the year, I no longer had any duties with the parents other than as a computer teacher. Parker forbade me from speaking to the parents about anything negative regarding the school, which would include segregation.

P. App. 446, ¶14. This is significant for two reasons. First, it indicates an effort to quell dissent against Parker's segregative practices at PHES. Second, it evidences that McKay's public advocacy was considered a threat, and thus a target, of Parker's campaign against her, a tacit recognition and patent indication that it was Plaintiff's public speech, not internal complaints, that generated the retaliation.

Based on the evidence presented, the Court finds that Plaintiff has raised a genuine issue of fact regarding whether Parker retaliated against her for engaging in protected speech. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's First Amendment retaliation claim should be and is hereby **DENIED**.

**D.** <u>Declaratory Judgment</u>

Parker moves for summary judgment on Plaintiff's request for a declaratory judgment that Parker's past practices were in violation of Title VI, Section 1983, and other laws.

Having decided that issues remain regarding whether Defendant Parker has violated Plaintiff's First Amendment rights, in violation of 42 U.S.C. § 1983, the Court finds likewise that issue remain regarding whether declaratory judgment and injunctive relief are appropriate.

Therefore, Defendant's Motion for Summary Judgment on Plaintiff's declaratory judgment claim should be and is hereby **DENIED**.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that summary judgment is **GRANTED** as to Plaintiff's Title VI claim against Defendant Parker; the claims are **DISMISSED** with prejudice.

It is further **ORDERED** that summary judgment is **GRANTED** as to Plaintiff's procedural due process claims against Defendant Parker; the claims are **DISMISSED** with prejudice.

It is also **ORDERED** that summary judgment is **DENIED** as to Plaintiff's First Amendment claims under § 1983 against Defendant Parker for retaliation against Plaintiff and **DENIED** as to Plaintiff's claim for declaratory judgment.

Signed this 3rd day of March, 2009.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**