IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRACIELA SERNA MCKAY | § § § § | |
| Plaintiff | | |
| v. | § § § § | CIVIL ACTION NO. 3:06-CV-2325-O ECF |
| DALLAS INDPENDENT SCHOOL DISTRICT, et al. | § § § § § | |
| Defendants | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion For Summary Judgment filed by the Dallas Independent School District ("DISD") and the Dallas Independent School District Board of Trustess ("the DISD Board") on December 8, 2008 (Doc. # 87); Plaintiff's Response to Motion For Summary Judgment filed by Graciela McKay on January 12, 2009 (Doc. # 112); and Defendants' Reply to Response to Motion For Summary Judgment filed January 30, 2009 (Doc. # 125).

**I.    Background**

The present action is related to *Santamaria v. DISD, et al.,* resolved earlier by trial before the Honorable Judge Sam Lindsay. *See* Doc. # 231 (3:06-CV-692-L) (N.D. Tex. Sept. 30, 2007). In *Santamaria*, Judge Lindsay ruled that former Preston Hollow Elementary School ("PHES") principal Teresa Parker ("Parker") engaged unlawfully in the practice of segregation by race

1

within her school for a period of several years. *Id.* Specifically, the court found that Parker deliberately assigned Latino and African-American students to English-as-a-second-language ("ESL") classrooms instead of general education classes so that white students could be kept together in the same class. In addition, the court found that Parker kept ESL classes in a different part of the PHES building than general education classes. Furthermore, the court found that Parker attempted to conceal this behavior, including shuffling children around to make the classes appear integrated when an investigator visited PHES. The court found these actions violated PHES students' constitutional rights. *Id.*[1]

Graciela McKay filed the instant case on December 15, 2006. Plaintiff McKay ("Plaintiff") is a former PHES teacher and community liaison. *See* Doc. # 20 (Plaintiff's Amended Complaint). Plaintiff alleges that, while at PHES, she opposed Parker's practices of segregation, and that she suffered adverse employment actions because of this. *See id.* Plaintiff brings claims against Parker, the Dallas Independent School District, the DISD Board of Trustees, and DISD Superintendent Michael Hinojosa arising out of these allegations including claims for retaliation for opposing segregation, in violation of Title VI; retaliation for public advocacy, in violation of the First Amendment; and for failure to provide Plaintiff with a hearing in violation of her Fourteenth Amendment due process rights. Plaintiff asks for damages and attorney's fees, as well as declaratory judgment and injunctive relief.

On December 8, 2008, Defendants DISD and the DISD Board filed their Motion for Summary Judgment on all of Plaintiff's claims pending against them. Having reviewed the rele-

---

[1] This finding was against Parker in her personal capacity. DISD and Superintendent Hinojosa were not found liable for the segregation at PHES.

vant filings, the evidence, and the applicable law, the Court found on March 3, 2009, that Defendants DISD and the DISD Board's Motion for Summary Judgment should be and was **GRANTED**.  Doc. #175. The Court now files this opinion of record to memorialize the reasons for its finding.

### Summary Judgment Standard

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b). Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp.,* 477 U.S at 323.  While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The party that moves for summary judgment bears the initial burden of showing that there is an absence of genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Rule 56(b) permits the movant to demonstrate this "with or without supporting affidavits." FED. R. CIV. P. 56(b). Indeed, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325 (finding no express or implied requirement in *Rule 56* that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 323-24. The Court must "resolve doubts in favor of the non-moving party and make all reasonable inferences in favor of that party." *Dean v. City of Shreveport,* 438 F.3d 448, 454 (5th Cir. 2006); *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir. 1988). However, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

The non-movant achieves this only by identifying "specific evidence in the record and … articulat[ing] the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Celotex*, 477 U.S. at 324.

### III. Analysis

Defendants DISD and the DISD Board have moved for summary judgment with respect to Plaintiff's claims for retaliation for opposing segregation, in violation of the First Amendment and for failure to provide Plaintiff with a hearing, in violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983. Defendants also move for summary judgment on Plaintiff's claim for retaliation for opposing segregation under Title VI of the Civil Rights Act of 1964.

The Court first addresses summary judgment with respect to Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983.

#### A. § 1983 claims

Plaintiff alleges that she was deprived of her First Amendment right to engage in public advocacy and deprived of due process under the Fourteenth Amendment in violation of 42 U.S.C. §1983. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right "secured by the Constitution and the laws of the United States" and (2) that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999).

Plaintiffs establish municipal liability under § 1983 by showing: (1) an official policy or custom; (2) a policymaker who had actual or constructive knowledge of that policy or custom;

and (3) a violation of constitutional rights for which the policy or custom was the "moving force. *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (citations omitted). Unless the policy has been officially promulgated, proof must show a customary, "persistent, widespread practice of city officials or employees … so common and well settled as to constitute a custom that fairly represents municipal policy," of which the policy-maker has "[a]ctual or constructive knowledge." *Pineda,* 291 F.3d at 329.

The Supreme Court has emphasized the claim of a custom may only "subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997). "Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy" that can be identified as actual, known policy. *Id.*

The Board of Trustees is the policy-maker for a Texas independent school district. *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247-48 (5th Cir. 2004) (citing TEX. EDUC. CODE § 11.151(b)). Plaintiff does not specifically identify, within her response to Defendants' motion for summary judgment, any policies or customs in connection with her § 1983 claims. However, Plaintiff's arguments and pleadings can be read as asserting that DISD has a policy of refusing to provide a name clearing hearing to employees.

The Court finds that Plaintiff has not presented any evidence from which a reasonable jury could conclude (1) that DISD had a policy of refusing name clearing hearings; or (2) that Plaintiff was denied a name clearing hearing in connection with her employment with DISD. Instead, the evidence shows that Plaintiff had an informal meeting with Principal Parker regard-

6

ing her employment, and that Plaintiff also had a "Level 1" hearing pursuant to DISD grievance procedures. *See, e.g.,* Def. App. 090-92, 514-17. In addition, the undisputed evidence shows that DISD and Plaintiff contemplated holding a subsequent hearing pursuant to DISD grievance procedures, but that Plaintiff abandoned the grievance process by a letter from counsel stating:

> Thank you for your interest in proceeding with the Level III hearing; however, Ms. McKay is inclined not to proceed with the grievance procedure. It would likely be futile, delay litigation, and cause added expense.

Def. App. 091; *see also*, Def. App. 517 (Plaintiff confirms in deposition testimony that she opted out of the grievance process). Plaintiff's intent to discontinue the hearing process is further evidenced by her lack of response to a follow-up letter from counsel for DISD confirming Plaintiff's abandonment of the Level 3 hearing, Def. App. 096, and McKay's Declaration, which states that she chose to pursue legal remedies rather than be a part of a "kangaroo court." Def. App. 096; P. App. 445. [2]

The Court therefore finds that Plaintiff has failed to raise a genuine issue of fact that DISD has a policy of refusing to provide a name clearing hearing to employees. In addition, Plaintiff has failed to raise a genuine issue of fact that she did not receive a name clearing hearing, demonstrating that the alleged policy was not the "moving force" behind the alleged violation of Plaintiff's constitutional rights.

Plaintiff also appears to allege, although argued in connection with her Title VI claims, that DISD had a policy of avoiding dealing with employee grievances until after the employee's

---

[2] The Court notes that Plaintiff insinuates that the hearings provided by DISD, in substance, failed to satisfy requirements of the Fourteenth Amendment, however, Plaintiff has produced no evidence raising a genuine issue of material fact that the hearings failed to meet due process standards.

contract had expired, and then not hiring back the employee who had filed the grievance. *See* Doc. # 12 ("P.'s Resp."). Plaintiff states that DISD had a "policy of fast tracking non-renewals and excluding any exculpatory or retaliatory claims from the renewal packets, and slow tracking the parallel grievances of any retaliation claims." *Id.* Plaintiff also references Superintendent Hinojosa's "typical practice" of not looking at non-renewal packets prepared by legal staff and a person from human resources, as well as DISD's "policy, custom, and practice" of treating grievance deadlines as more like guidelines. *Id.*

The parties do not dispute that the time deadlines set out in the DISD grievance framework were not followed here. *See* P. App. 307, 335-37, 349, 366-67. The only other evidence Plaintiff points out in support of this alleged "custom" of postponing grievance determinations until after contracts expire is testimony indicating that teachers prefer to resign than be non-renewed. P. App. 247. The Court does not find that this evidence raises a genuine issue of fact that DISD had an official policy or custom of avoiding handling grievances until after the alleged aggrieved party's contract expired, and then not rehiring teachers whose contracts have not been non-renewed. In addition, Plaintiff has offered no evidence that any such policy was the moving force behind the complained of employment actions or denial of Plaintiff's due process rights. To the extent Plaintiff intends for these alleged practices and customs to be considered as a basis for imposition of liability pursuant to § 1983, the Court finds Plaintiff has failed to raise an issue of material fact. *Pineda,* 291 F.3d at 328.

Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's claims under 42 U.S.C. § 1983 should be and is hereby **GRANTED**.

B. Title VI Claims (Retaliation)

Title VI of the Civil Rights Act of 1964 prohibits retaliation against an employee who has engaged in an activity protected by the Act, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The alleged retaliatory conduct may be proved by either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The Fifth Circuit has defined "direct evidence" in the context of retaliation as evidence which, if believed, proves the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003); *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002)). If a plaintiff can present direct evidence of retaliation, the plaintiff is not required to address the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Bisong v. Univ. of Houston,* 493 F.Supp.2d 896, 905 (S.D. Tex. 2007). The Court now addresses whether Plaintiff has produced direct evidence in support of her Title VI claim.

1. **Direct Evidence**

Plaintiff argues that she has direct evidence of retaliation. Specifically, Plaintiff argues that Principal Parker's first formal reprimand to Plaintiff, dated January 23, 2006, is direct evidence of retaliation. P's Resp. at 5-6.

The Court does not find that Parker's first formal reprimand constitutes direct evidence of

9

retaliation by DISD and/or the DISD Board. This evidence does not involve DISD or the DISD Board, and therefore is not evidence, which if believed, proves the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

The other evidence Plaintiff offers as to general awareness of Plaintiff's alleged speech consists of:

1. McKay reported to Parker a problem with the exclusion of Latino students for a photo opportunity in the brochure, P.'s App. 444;
2. McKay questioned McElroy, the Vice Principal, concerning the segregation, P.'s App. 172;
3. McKay filed three grievances reporting the segregation and retaliation, P.'s App. 132-36, 153-54, 173-74;
4. McKay responded to her performance appraisal with a report of segregation and retaliation, *id.*;
5. McKay reported retaliation to Darrell Coleman, counsel for DISD, in a level one hearing on April 18, 2008, P.'s App. 444;
6. McKay sent a letter dated February 9, 2006 to Hinojosa, reporting segregation and retaliation, P.'s App. 144, 444;
7. McKay sent letters to John Cornyn, Joe Barton, the Texas Education Agency, and the Office of Civil Rights (P. App. 145-50), reporting segregation and retaliation P.'s App. 145-48, 444;
8. Hinojosa met with parents concerning segregation, P.'s App. 449-50; and
9. High level representatives of DISD met with representatives, parents, MALDEF and LULAC to discuss segregation and Ms. McKay, P.'s App. 299, 303.

*See also* P.'s Resp. at 7.

Reading this evidence in the light most favorable to the Plaintiff, it shows at most that *representatives of DISD* were generally aware of the segregation controversy at PHES and McKay's claim that she had been retaliated against in the course of that controversy. It does not

10

amount to direct evidence that *the DISD Board* knew of Ms. McKay's advocacy when they took adverse employment action against her. Accordingly, the Court finds that Plaintiff has failed to produce direct evidence raising an issue of fact that the DISD Board retaliated against Plaintiff.

Plaintiff argues that to the extent that direct evidence is insufficient, Plaintiff may rely on "direct evidence" of deliberate indifference as outlined in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 287 (1998). P's Resp. at 6. *Deliberate indifference* is a level of intent beyond gross negligence that is applied in any number of contexts in civil rights law. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 658-61 (5th Cir. 1997); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 n. 7 (5th Cir. 1994) (en banc).

Defendant replies that McKay's attempt to establish direct evidence through deliberate indifference is improper. Defendant notes that *Gebser* involved a particular species of Title IX claim relating to sexual harassment where inappropriate sexual conduct occurred between a teacher and student, and that it is unclear whether the analysis in *Gebser* applies to a Title VI retaliation claim. Defendant further notes that the plaintiff in *Gebser* did not attempt to rely upon principles of deliberate indifference to establish direct evidence of a violation, but to demonstrate whether an act can be properly attributed to a school district to allow damages.

The Court finds it unnecessary to determine whether Plaintiff may rely on evidence of deliberate indifference as direct evidence in support of her Title VI retaliation claim. Even assuming the law is as Plaintiff argues, Plaintiff has failed to raise a genuine issue of material fact that DISD and/or the DISD Board were deliberately indifferent here.

The Supreme Court has emphasized that deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). This requires a deliberate decision not to remedy a known violation. *See Gebser*, 524 U.S. at 290. In this case, evidence of deliberate indifference would involve "the [Dallas] school board authorizing, tolerating, or condoning" retaliation against Plaintiff for opposing segregation. *Foster v. McLeod Indep. Sch. Dist.,* 2009 U.S. Dist. LEXIS 4682, *11-12 (E.D. Tex. Jan. 23, 2009) (citing *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 761 (5th Cir. 1993). In *Gonzales,* the Fifth Circuit found that a "supervisory defendant must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see … [thereby acting] either knowingly or with deliberate, reckless indifference." *Gonzales,* 996 F.2d at 761.

The Court finds that Plaintiff has not presented any evidence raising a genuine issue of material fact that the DISD Board or DISD disregarded a known or obvious consequence of retaliation. The undisputed evidence shows the DISD Board received the recommendation not to renew Plaintiff's contract from Superintendent Hinojosa, who in turn received it from a review committee that had considered Parker's recommendation that Plaintiff's contract should not be renewed. D. App. 001-003, 271-72, 411, 516. All parties have agreed that the materials DISD decision-makers reviewed when determining whether to renew McKay's employment did not mention her advocacy against segregation or her grievances against Parker. Def's Mot. at 15-16; Pl's Resp. at 12-13. Parker has presented no other evidence demonstrating that DISD or the DISD Board knew of Plaintiff's speech or any retaliation. Accordingly, assuming the law is as

Plaintiff argues, Plaintiff has failed to raise a genuine issue of material fact that DISD and/or the DISD Board were deliberately indifferent here.

### 2. Circumstantial Evidence

When discriminatory intent cannot be demonstrated by direct evidence, Title VI claims are examined under a burden shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973). *See DeLeon v. City of Dallas,* 2008 WL 2941245 (N.D. Tex. Jul. 25, 2008); *Bisong v. Univ. of Houston,* 493 F. Supp.2d 896, 904-05 (S.D. Tex. 2007); *Williams v. Galveston Indep. Sch. Dist.,* 256 F. Supp.2d 668, 671 (S.D. Tex. 2003). The *McDonnell Douglas* burden-shifting has three phases. *See Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001). Under the first prong, a plaintiff must first establish a prima facie case of retaliation, demonstrating that (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse action. *Ragg v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2004). If plaintiff meets this burden, the defendant must then articulate a "legitimate, non-discriminatory reason(s)" for the adverse action it took. *Rios,* 252 F.3d at 378. If defendant meets this burden, plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that defendant's reason is not true, but is instead a pretext for discrimination; or (2) that defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004).

While Plaintiff alleges that all of her evidence is direct, the Court has previously found that the evidence Plaintiff relies on requires inferences, and is therefore circumstantial. Accordingly, the Court now applies the *McDonald-Douglas* burden shifting framework to the evidence of this case.

The Court must first determine whether Plaintiff has made a *prima facie* case, demonstrating: (1) that Plaintiff engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002). Defendants argue that Plaintiff fails to meet all three elements of this test. The Court now focuses on the third element, the causal link between the protected activity and the adverse action.

The third element of the *prima facie* case requires evidence that "demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity." *Evans v. Texas Dep't of Trans.,* 547 F.Supp. 2d 626, 655 (E.D. Tex. 2007). Defendant argues that Plaintiff has failed to meet this burden, and the Court agrees. While Plaintiff has characterized all of her evidence as direct, the Court finds that even considering all inferences that arise from the evidence Plaintiff has presented, the evidence fails to raise a genuine issue of fact regarding whether the DISD Board was aware of Plaintiff's advocacy when it decided not to renew Plaintiff's contract.

While the Court has found that Plaintiff has failed to produce evidence raising a genuine issue of fact regarding whether the DISD Board was aware of Plaintiff's advocacy when it decided not to renew Plaintiff's contract, courts have held that when the titular decision maker

"serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." *Evans*, 547 F.Supp.2d at 655-58; *see also Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). The theory is also known as a "rubber stamp" theory. *See, e.g., Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 226-27 (5th Cir. 2000). The proponent of the cat's paw analysis must show that: (1) a co-worker exhibited retaliatory animus; and (2) that the same co-worker possesses leverage, or exerted influence, over the titular decisionmaker. *Evans,* 547 F. Supp. 2d at 656.

The Fifth Circuit offered an example of the type of influence required under the cat's paw analysis in *Russell v. McKinney Hosp. Venture,* where plaintiff Sandra Russell brought an ADEA action after termination of her employment. *Russell,* 235 F.3d at 226-27. In *Russell,* the Court applied the "cat's paw" analysis to determine whether Steve Ciulla, who allegedly made ageist comments and otherwise exhibited an ageist motive toward Russell, was the person primarily responsible for the termination of Russell's employment. *Id.* at 227-28. While Russell's employment was officially terminated by her supervisor, Carol Jacobson, the Court found that Russell had presented adequate evidence at trial for a jury to find that Steve Ciulla wielded sufficiently great "informal" power within the company such that he effectively became the decisionmaker with respect to Russell's termination. The Court noted that Russell presented evidence that Ciulla gave Jacobson an ultimatum that he would quit if she did not fire Russell; Jacobson's budget was controlled by Ciulla's father; Jacobson went crying to her assistant immediately after Ciulla's ultimatum; before the ultimatum, Jacobson had told Russell that she was not going to lose her job over the friction between Russell and Ciulla; Ciulla unilaterally transferred

15

an employee under Russell's supervision without her knowledge or consent; and Ciulla received "perks" that his colleagues did not, such as arriving late at work with impunity, setting up a ping-pong table outside his office, and playing in charity golf tournaments on company time. *Id.* at 228. The Fifth Circuit concluded that a jury could find that Ciulla was motivated by age-based animus and was principally responsible for Russell's firing. *Id.*

Unlike the situation in *Russell*, the evidence produced by Plaintiff fails to raise a genuine issue of fact that anyone with a retaliatory animus had influence over the DISD Board, who officially terminated Plaintiff's employment. While the Court found a genuine issue of fact existed for trial regarding whether Principal Parker retaliated against Plaintiff, the evidence also shows that Parker submitted a recommendation of non-renewal for Plaintiff, which was examined by a review committee and a district superintendent, who in turn submitted the recommendation for review by the DISD Board. D. App. 28-35, 292, 555-60. This evidence does not allow a reasonable jury to conclude that DISD Board essentially regarded the decision to non-renew Plaintiff's contract "as ordained by other forces." Accordingly, the Court finds that Plaintiff has failed to present any direct evidence demonstrating that the DISD Board knew of Ms. McKay's advocacy and retaliated against her when they decided not to renew McKay's contract.

Because Plaintiff has failed to raise a genuine issue of material fact that the DISD Board was aware of Plaintiff's advocacy when it decided not to renew Plaintiff's contract, Plaintiff has failed to establish a causal link between her speech and any adverse employment action. Accordingly, the Court finds that Plaintiff has failed to satisfy the first prong of the *McDonnell Douglas* burden-shifting analysis.

In addition, even if Plaintiff had met her initial burden regarding her *prima facie* case, the Court finds that Plaintiff has failed to produce evidence rebutting Defendants' articulated legitimate, non-discriminatory reasons for the adverse action taken by the DISD Board, and has not otherwise demonstrated that a discriminatory reason motivated DISD's decision to not renew Plaintiff's contract. *See* Def. App. 133-282. The Defendants note that: Parker had received complaints about McKay from teachers and parents. Def. App. 101-02, 104-07, 159-171, 383; parents and teachers both became uncomfortable being around McKay because of her open contempt for others, Def. App. 104-105, 164-67, including that McKay had made racist remarks against white people in front of parents and students, Def. App. 104-105; and McKay frequently cancelled her classes, resulting in one teacher complaining that she had not provided the services she was to provide in her position. Def. App. 106, 170-71. Plaintiff has offered no evidence rebutting this evidence or otherwise demonstrating a discriminatory reason motivated DISD or the DISD Board.

Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's claims under Title VI should be and are hereby **GRANTED**.

C. Declaratory Judgment

Having resolved Defendants' motion with respect to Plaintiff's § 1983 and Title VI claims, the Court now addresses Plaintiff's claim for a declaration that Defendants' past practices violated laws including 42 U.S.C. § 1983 and Title VI, and for an injunction prohibiting future violations.

The Court has found that summary judgment in Defendants' favor is appropriate with respect to Plaintiff's claims under Title VI and 42 U.S.C. § 1983. Having dismissed these claims against the Defendants, the Court finds that there is no genuine issue of material fact that Plaintiff is not entitled to declaratory or injunctive relief from with respect to the Defendants. The Court has not been directed to any authority, nor does it find any, by which it might impose injunctive relief or other penalties on an entity on the prospect that it might fail to obey the law when that entity has not been shown to have disobeyed the law.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's declaratory judgment claim should be **GRANTED**, as it was so **ORDERED** of this Court on March 3, 2009.

### IV. Conclusion

For the foregoing reasons, the Court has **GRANTED** Defendant DISD's Motion for Summary Judgment. All of Plaintiffs claims against Defendant DISD are hereby **DISMISSED with PREJUDICE.**

Signed this **10th** day of **March, 2009**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**